UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURT OF MASTER SOMMELIERS, AMERICAS,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL LAWRENCE PILKEY,<br><br>Defendant. | Case No. 19-cv-03620-SK<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Regarding Docket Nos. 23, 32 |

The Court of Master Sommeliers, Americas ("Plaintiff") brought a complaint for trademark infringement against Daniel Pilkey ("Defendant") on June 21, 2019. (Dkt. 1.) Defendant moved to dismiss for lack of jurisdiction or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). (Dkt. 23.) Plaintiff opposed the motions. (Dkt. 32.) Plaintiff also filed a motion for leave to seek jurisdictional discovery, which it styled as an administrative motion. (Dkt. 29.) Defendant opposed that motion. (Dkt. 30.) The Court concludes that the pleadings provide sufficient jurisdictional facts to decide the motion to dismiss and therefore DENIES the motion for jurisdictional discovery. Having considered the submissions of the parties, the relevant legal authorities, and the record in the case, and having had the benefit of oral argument, the Court GRANTS the motion to dismiss for lack of personal jurisdiction. The motion to transfer venue is therefore MOOT.

## BACKGROUND

Plaintiff is a California nonprofit corporation with its principal place of business in Napa County, California. (Dkt. 1.) Plaintiff runs a multi-level certification program for wine and beverage experts, or sommeliers. (*Id.*) The top diploma available under Plaintiff's program is the "Master Sommelier" or "MS" diploma. (*Id.*) To attain the Master Sommelier diploma, a

candidate must pass three lower tiers of sommelier certification before being invited to sit for the three-part Master Sommelier Diploma Examination (the "Exam"). (*Id.*) The difficulty of the Exam has been widely recognized and documented in popular culture. (*Id.* at ¶ 16, citing 2013 documentary "Somm" and 2016 television series "Uncorked.") To conquer the Exam, candidates must pass each of a triptych of challenges, including theory, practical, and tasting, by 75 percent within the same three-year period. (*Id.* at ¶ 10.) Pass rates hover around 4 percent per year, which typically comprises fewer than ten successful candidates. (*Id.* at ¶ 9.) Only 165 individuals have achieved the rank of "Master Sommelier." (*Id.*) Plaintiff's Board of Directors administers the Exam and regulates membership in the Court of Master Sommeliers, Americas. (*Id.* at ¶ 11.) Plaintiff is the registered owner of the federal trademark "Master Sommelier," Registration No. 4,473,561, and the associated Master Sommelier seal, which shows a Romanesque cameo in profile with a bundle of grapes worn as a garland, ringed by the words "Master Sommelier" in sans serif capitals, Registration No. 2,384,665. (*Id.* at ¶ 12.) Plaintiff alleges that these marks are widely used in the fine wine and beverage industry to signal passage of the Exam and that the designation is prestigious. (*Id.* at ¶ 15-16.)

Defendant is a citizen of Illinois, where he has resided in Chicago since 2009. (Dkt. 23-1.) Defendant is the Midwest Regional Sales Manager for the Sonoma County-based Paul Hobbs Wines Company, and his sales territory includes Kansas, Nebraska, Iowa, Minnesota, Wisconsin, Illinois, South Dakota, and Missouri. (*Id.*) Defendant does not make sales, manage employees, or distribute marketing materials in California. (*Id.*) Defendant grew up in the Northern District of California, "in the small farming town of Livermore, California." (Dkt. 33 (Brockett Dec. Ex. C).) He began working at Wente Vineyards at age 14, where he "discovered his passion for food and wine." (Dkt. 33 (Brockett Dec. Ex. D).) Following his stint at Wente, Defendant received his Certificate in the Business of Wine at San Diego State University. (*Id.*) While in San Diego, he worked at the Addison Restaurant. (*Id.*) In 2004, Defendant passed Plaintiff's introductory sommelier course. (Dkt. 32.) In 2008, he completed the Master Sommelier Advanced level, qualifying to take the Exam. (*Id.*) In 2009, he moved to Chicago to join the Elysian Hotel as sommelier. (Dkt. 33 (Brockett Dec. Ex. E).) Plaintiff asserts that Defendant has taken the Exam a

2

United States District Court
Northern District of California

1    total of ten times since 2010.  (Dkt. 32.)  In order to take the test, Defendant sent an application

2    form to Plaintiff each time.  (*Id.*)  Defendant passed the theory portion of the Exam in March 2016

3    and the practical portion in October 2017.  (*Id.*)  On September 3-5, 2018, Defendant took the

4    tasting portion of the Exam in St. Louis, Missouri.  (Dkts. 1 at ¶ 18; 23-1 at ¶ 4.)

5            A record number of candidates passed the tasting portion of the examination at the

6    September 2018 sitting, including Defendant; 24 candidates were inducted as Master Sommeliers

7    and given pins bearing Plaintiff's seal to wear.  (Dkt. 1 at ¶ 19-20.)  Subsequently, Plaintiff

8    learned that one of its own members had disclosed confidential information about the tasting

9    portion of the examination before the September 2018 Exam to an unknown number of candidates.

10   (*Id.* at ¶ 21.)  Plaintiff invalidated the scores of those candidates who had passed the tasting

11   portion in September 2018 (a group comprising 23 of the 24 inductees).  (*Id.* at ¶ 21-22.)

12   Defendant was among those whose scores were invalidated as a result of Plaintiff's decision.  (*Id.*

13   at ¶ 23.)  Plaintiff sent a letter through an attorney to the affected inductees and proposed that it

14   would suspend each inductee's membership, to be reinstated upon successful passage of another

15   tasting portion of the Exam at one of three sittings in either 2018 or 2019.  (*Id.* at ¶ 24.)

16   Defendant's membership was suspended on November 13, 2018.  (*Id.* at ¶ 27.)  Defendant retook

17   the tasting portion in December 2018, but did not pass.  (*Id.* at ¶ 28.)

18           Plaintiff brings a single claim for trademark infringement against Defendant, alleging that

19   Defendant has continued to hold himself out as a Master Sommelier despite the fact that his status

20   was revoked.  (Dkt. 1 at ¶ 30-32, 39-49.)  Plaintiff claims that Defendant has improperly used its

21   trademarks to label himself "Master Sommelier" or "MS" on his Instagram account, LinkedIn

22   profile, and Twitter account.  (*Id.*)  Plaintiff seeks a preliminary and permanent injunction

23   restraining Defendant from using Plaintiff's marks, along with attorneys' fees and costs.  (Dkt. 1.)

24           Plaintiff contends that this Court has jurisdiction over Defendant to enter such an

25   injunction; in support of this position, it points to several jurisdictional facts.  Plaintiff argues that,

26   because Defendant lived and worked in California from age 14 to 2009, he has family, friends, and

27   professional contacts in the state.  (Dkt. 32 at pages 10-15 (citing Dkt. 33 (Brockett Dec. Ex. C, D,

28   E, F, K).)  Plaintiff alleges that Defendant is known in Chicago for his knowledge of and access to

rare California wines. (Dkt. 32 at page 12 (citing Dkt. 33 (Brockett Dec. Ex. H).) Plaintiff also points out that, as part of his employment by Paul Hobbs Wines, Defendant has made three trips to this district since April of 2018, for orientation, training, and annual harvest at the winery. (Dkt. 33-2 (Pilkey Dec.).) Defendant has also made three trips unrelated to Paul Hobbs Wines in 2018 and 2019; one to serve as best man in a wedding, one to visit his niece and nephew, and one to serve as judge at a San Diego wine competition. (*Id.*) Plaintiff argues that Defendant directly engaged with this forum by seeking certification by a nonprofit organization located here and by sending applications to take its certification examination to the organization. (Dkt. 1.) Plaintiff further points to several Instagram posts (Dkts. 33-15, 33-16; 29-3; 29-4) and tweets (Dkts. 29-5; 33-17; 33-11; 33-9) that it claims amount to direct targeting of the California forum. Because Defendant "used his social media accounts to discuss and promote fine wines, and to promote himself within the wine industry, and he knew his audience included wineries and wine professionals in California," Plaintiff argues Defendant is subject to personal jurisdiction in California. In addition, Plaintiff speculates that Defendant is subject to jurisdiction because, in procuring wine, he likely conducts business with California wineries and California-based importers.

## DISCUSSION

**A.     Legal Standards.**

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss an action for lack of personal jurisdiction. Presented with such a motion, the plaintiff then bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). If the district court decides the motion without holding an evidentiary hearing, as is the case here, the plaintiff need only make a *prima facie* showing of the jurisdictional facts. *Id.* The court takes uncontroverted allegations in the plaintiff's complaint as true and resolves any factual conflicts in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, the plaintiff may not merely rest on bare allegations, and the court may not assume the truth of allegations contradicted by affidavit. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted).

4

Where, as here, no federal statute authorizes personal jurisdiction, the district court must apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with the due process clause of the Constitution. *Id.* Accordingly, the jurisdictional analyses under state and federal law are the same. *Schwarzenegger*, 374 F.3d at 800-01. For a court to exercise personal jurisdiction over a nonresident defendant without violating the dictates of due process, that defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Personal jurisdiction may be either general or specific. *Boschetto*, 539 F.3d at 1016. Only specific jurisdiction is at issue in this case. In seeking to establish specific jurisdiction, a plaintiff may claim that a nonresident defendant has sufficient "minimum contacts" with the forum state to be subject to specific personal jurisdiction there. *Schwarzenegger*, 374 F.3d at 801-02. Fundamentally, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted). Courts analyze specific jurisdiction under a tripartite formula:

(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of this test. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If the plaintiff fails to satisfy either of the first two prongs, personal jurisdiction does not lie in the forum state. *Schwarzenegger*, 374 F.3d at 802. If both prongs are satisfied, the burden shifts to the defendant

5

to demonstrate that the exercise of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

In analyzing the first prong of the specific jurisdiction test, courts treat the concept of "purposeful availment" "somewhat differently in tort and contract cases." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). "In tort cases" like the one at bar, courts "typically inquire whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.*[1] Under the effects test, derived from *Calder v. Jones*, 465 U.S. 783, 789-91 (1984), a defendant is said to have purposefully directed his activities at a forum where he (1) committed an intentional act (2) expressly aimed at the forum state (3) that caused harm the defendant knew was likely to be suffered in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Crucially, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014.)

**B.     Analysis.**

Having weighed the jurisdictional facts that Plaintiff has adduced under the appropriate standards, the Court concludes that exerting personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice. The first prong of the specific jurisdiction analysis, which looks to whether a defendant has purposefully availed himself of the forum state, is dispositive. *Schwarzenegger*, 374 F.3d at 802. Because Plaintiff has not carried its burden of showing jurisdiction is justified under the purposeful availment prong, jurisdiction does not lie and the Court need not reach the two remaining prongs of the test.

---

[1] Some courts have applied the contractual purposeful availment test in tort cases, but only where the plaintiff's tort claims arise from a contractual relationship. *See, e.g.*, *Nu-Cal Foods, Inc. v. Quality Egg, LLC*, 887 F. Supp. 2d 977, 989 (E.D. Cal. 2012) (citing *Richmond Technologies, Inc. v. Aumtech Business Solutions, Inc.*, 2011 WL 2607158, at *4 (N.D. Cal. July 1, 2011) (in turn citing *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)).

Plaintiff argues jurisdiction based on a theory of contractual purposeful availment. However, there is no contract between Plaintiff and Defendant in this case, and Plaintiff did not point to one.[2] The Court accordingly declines to apply that standard here. Rather, the correct approach in weighing the first prong of the specific jurisdiction analysis is to employ the standard applicable to tort claims and analyze whether the *Calder*-effects test is satisfied. The Court finds that it is not. Defendant did not direct any intentional act related to his alleged trademark infringement to the state of California. Plaintiff argues that Defendant committed an intentional act by placing its marks on his social media profiles and then using the rest of his social media presence to target the California market. (Dkt. 32 at pages 22-25.) The social media posts Plaintiff identifies are not sufficient to justify the exercise of specific jurisdiction here.

Plaintiff points to four offending Instagram posts that Plaintiff argues are deliberately targeted at California. (Dkts. 33-15, 33-16; 29-3; 29-4.) All were posted to Defendant's personal Instagram account, @chi_town_somm. (*Id.*) The first is a close-up picture of the label of a bottle of Paul Hobbs Cabernet Sauvignon, 2011 vintage. (Dkt. 33-15.) It is geotagged[3] "Guerneville, California," and captioned "Part of becoming a wine professional is having an open mind and tasting without preconceived notions – the 2011 was incredible! #proofinthebottle #paulhobbs #secondcitysomms #napavalley." (*Id.*) The second is a close-up picture of three bottles of Paul Hobbs Chardonnay, 2016 vintage. (Dkt. 33-16.) It is geotagged "Maestro's Steakhouse" and captioned "Thank you @maestrosofficial for a memorable night of #paulhobbswines @paulhobbswines '16 Chards are [fire emoji] [fire emoji] Surprise Wines of the Night … 2011 Dr. Crane and Katherine Lindsay PN '12 RRV. Featured #ellenlaneestate #edwardjamesestate #rossstationestate #richarddinnervineyard." (*Id.*) The third is a picture of two rows of grapevines,

---

[2] Plaintiff at hearing argued that Defendant's potential defense to the claim for trademark infringement is that he is entitled to use the designation as "Master Sommelier" and that defense is based on contract. This argument is speculative and also too tangential to create specific jurisdiction.

[3] The Court observes that an Instagram geotag may reflect the content of a post, rather than strictly the location of the poster when posting, though it may reflect that as well. For example, a poster could geotag a post of a tee shirt bearing a picture of the Golden Gate Bridge "San Francisco, California" regardless of whether the poster were physically located in San Francisco at the time of the post or not.

7

1  with different color foliage.  (Dkt. 29-3.)  It is geotagged "Napa, California," and captioned
2  "Malbec versus Cabernet color… which do you think is which? #nathancombsestate #paulhobbs."
3  (*Id.*)  The fourth is a close-up picture of a name card bearing Defendant's name over the words
4  "Sommelier" "Judge" "Sommelier Challenge International Wine & Spirits Competition."  (Dkt.
5  29-4.)  It is not geotagged and captioned "17 Pinot, 3 Spanish, 11 Cab Franc, 24 Cab Sauv.  Day 1
6  AM can't wait to start the day!! #criticschall #secondcitysomms #sommlife #sommchallenge."
7  (*Id.*)

8  Plaintiff also points to a series of tweets that were part of a twitter "chat" between Twitter
9  user "KeeperCollection," Defendant, and other twitter users.  (Dkts. 33-17; 33-11; 33-9.)  In its
10 tweet announcing the chat, KeeperCollection refers to "Master #Sommelier @dpilkey #Chicago
11 based."  (Dkt. 33-17.)  The other tweets show KeeperCollection posing questions to Defendant
12 and his responses; the questions focus on how Defendant got into the wine industry and what his
13 ideal wine job would be, without any specific reference to Plaintiff or its marks.  (Dkts. 33-9, 33-
14 11.)

15 Plaintiff further contends that Defendant improperly identifies himself using the terms
16 "Master Sommelier" and "MS" in the profile sections of his LinkedIn, Twitter, and Instagram
17 accounts.  (Dkt. 1 at ¶ 30-32.)

18 **1.    Case Law on Social Media and Purposeful Direction.**

19 The Court is faced with a somewhat novel task in evaluating whether Defendant's posts on
20 social media, including the posts described above, amount to intentional acts expressly aimed at
21 California.  Only a handful of courts have directly considered whether a specific social media post,
22 or series of posts, constitute purposeful direction.  Even fewer of these courts have considered
23 posts to a personal account.  For example, one court found that tweets from a business account
24 regarding "San Francisco/Oakland" sessions of a company's sports training camps clearly
25 "demonstrate[d] 'individualized targeting' of California markets."  *United States Futsal*
26 *Federation v. USA Futsal LLC*, 2018 WL 2298868, at *8 (N.D. Cal. May 21, 2018) (Beeler, M.J.).
27 Similarly, another court found that, where the defendant "operated a very popular website with a
28

specific focus on the California-centered celebrity and entertainment industries,"[4] placing photographs on that website conferred specific jurisdiction because the photographs were allegedly subject to copyright protection and receiving views from the website's "substantial California viewer base" was "an integral component of [defendant's] business model and its profitability." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011). The "large media entity" at issue in *Mavrix* functioned as a business and was ranked number 3,622 of the approximately 180 million websites in existence at the time, bringing in 70 million U.S. page views per month. *Id.* at 1222. It was against this backdrop that the Ninth Circuit found that the defendant "used [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain." *Id.* at 1229. The *Mavrix* court concluded this commercial exploitation was the "most salient fact" in the jurisdictional analysis. *Id.*

In contrast, the courts in *Monster* and *Nebel* did address posts from personal social media accounts. In *Monster*, the court concluded that a defendant "directly targeted California consumers by advertising, on his personal Instagram account, a […] sponsored party in Palm Springs, California." *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, 2019 WL 26199666, at *6 (C.D. Cal. May 20, 2019). The defendant in *Monster* also oversaw a marketing campaign, at least partially conducted using social media, that negatively targeted the California resident plaintiff, in order to compete for California sales. *Id.* And in *Nebel*, the plaintiff, a security alarm company, entered into a sponsorship agreement with the defendant, a well-known professional boxer. *Security Alarm Financing Enterprises, L.P. v. Nebel*, 200 F. Supp. 3d 976, 980-81 (N.D. Cal. 2016) (Armstrong, D.J.). In exchange for goods, services, and cash, the defendant began to represent the company as part of her professional boxing persona, including by wearing branded gear at matches. *Id.* at 981. The parties' relationship soured when the plaintiff posted a picture of the defendant in yoga pants that the defendant found oversexualized, and the agreement was

---

[4] The Court notes that the website at issue was not one of the current social media fixtures, such as LinkedIn, Facebook, Instagram, or Twitter, but rather a "blog style" gossip website that nevertheless shares many traits with those platforms, including the ability to scroll through the site, frequent topical posting by the site's editors, and commenting between users as a central feature. 647 F.3d at 1222.

9

terminated. *Id.* After the relationship ended, the defendant posted pictures to her personal Facebook and Instagram accounts wearing the plaintiff's branded gear. *Id.* at 982. Plaintiff sued for trademark infringement, and defendant, a Nevada resident, moved to dismiss for lack of personal jurisdiction. *Id.* The court held that the social media posts were insufficient to confer specific jurisdiction under the purposeful direction standard. *Id.* at 985-86. The court reminded the parties that "not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Id.* at 985 (quoting *Mavrix*, 647 F.3d at 1231). The defendant "never maintained a website" but merely "maintains personal, non-commercial profiles" on popular social media sites "which merely provide information regarding [the defendant] and her boxing career to interested parties." *Id.* at 985. Because the plaintiff did not adduce any evidence that the "posts were in any way directed or targeted at California or a California audience," the court held that it lacked specific jurisdiction over the defendant based on those posts. *Id.* Citing *Walden*, 571 U.S. 277, for its admonition that the defendant's only connection to the forum cannot be contacts with a resident plaintiff, the court similarly rejected plaintiff's argument that sending emails to plaintiff about their business relationship sufficed for personal jurisdiction because plaintiff was a California entity. *Id.*

Another court declined to find specific jurisdiction over superstar rapper "Cardi B" simply because she advertised her debut album, whose cover art the Plaintiff claimed misappropriated his likeness, on her personal Instagram and Twitter accounts. *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 925-26 (C.D. Cal. 2018). The plaintiff argued that Cardi B should be subject to specific jurisdiction because the entities whose platforms she used to post about her albums were California companies. *Id.* The Court disagreed, noting that "holding otherwise would subject any of the millions of people around the world, who maintain Facebook or other social media accounts, to personal jurisdiction in California" simply because those platforms are based in the state. *Id.* The case is slightly inapposite here because the allegation was that the location of the entities themselves, rather than the posts on the platforms, sufficed for personal jurisdiction. However, it seems to support the relevant proposition that mere use of a social media platform incidentally connected to California, without more, is an insufficient basis for specific jurisdiction.

10

### 2. Defendant's Social Media Posts.

Here Defendant's social media posts are not purposefully directed at California. The instant case is distinguishable from *Futsal* and *Marvix* because the accounts at issue, though publicly available for viewing, are personal accounts, rather than those of a business entity. And unlike the plaintiff in *Monster*, Defendant's posts are not targeted to California.

Defendant's Instagram handle, @chi_town_somm, is geared toward Chicago, reflecting his occupation as a sommelier in that city. Further, his hashtags also reflect his involvement with the Chicago wine scene (*e.g.*, #secondcitysomms). Apart from the Chicago-specific references, the content of his posts appears to be general information and enthusiasm about wine – topics which might be appealing to any sommelier or fan of wine. Some posts feature information about his California childhood or the source of his interest in wine, and some feature references to his California-based employer.[5] Defendant has provided evidence that he does not currently live or sell wine in California. (Dkt. 33-2 (Pilkey Dec.).) Without more, Plaintiff cannot link Defendant's activities promoting himself as a sommelier to California in particular. The Court is required to accept Plaintiff's jurisdictional allegations as true, except where, as here, Defendant's affidavit directly contradicts those allegations. Plaintiff's assertions that Defendant has deep ties to the California wine industry and works commercially with California importers and distributors are purely speculative.

In an attempt to connect Defendant's general wine posts to California, Plaintiff argues that, because California is widely acknowledged to make superlative wine, Defendant's posts about wine must clearly be targeted to a California market. (Dkt. 32 at pages 9-10.) That chain of logic is attenuated. Although some of Defendant's posts address California wine and his employer's wine in particular, Defendant also appears to be known for his interest in "small vineyards and hard-to-find bottles from across the globe." (Dkt. 33-12 (Brocket Dec. Ex. L).) Plaintiff's argument would sweep a citizen of any state making a personal social media post about wine

---

[5] An individual is not subject to personal jurisdiction in a state where he is not resident simply because his employer is headquartered or incorporated in that state. *See, e.g.*, *Baanyan Software Services, Inc. v. Kuncha*, 433 N.J. Super. 466, 477-79 (N.J. App. 2013) (Illinois resident employee of New Jersey corporation not subject to specific jurisdiction in New Jersey when none of her contacts on behalf of the corporation took place in or affected New Jersey).

under the aegis of the California courts simply because much good wine is made in California. Under Plaintiff's logic, anyone who has purchased California wine and tagged a picture in Napa Valley on a personal Instagram account would be subject to personal jurisdiction here. This expansive notion of jurisdiction cuts against the scope of the contacts that courts have traditionally required to justify the exertion of judicial power. "Due process requires that a defendant be haled into court in a forum state based on *his own* affiliation with the State, not based on the 'random, fortuitous or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citing *Burger King*) (emphasis added).

Personal Instagram accounts may indeed be used to build a personal "brand" and generate advertising revenue. However, scale and targeting are crucial questions in this context. A personal, if public, Instagram account with a small number of followers is distinct from a popular commercial website specifically focused on a California industry, like the one discussed in *Marvix*. Here, Defendant did not use his social media posts for "commercial exploitation" of the California market. Though some posts refer to California wines produced by his employer, those wines are commercially available throughout the United States. Indeed, if any market was targeted by those posts, it would be the markets within Defendant's geographic sales territory, which does not include California. Further, as the court noted in *Nebel*, the fact that these posts were publicly available and might be partially focused on Defendant's personal branding and sommelier career does not make them commercial. The posts were not advertisements *per se*[6] and likely were only disseminated to the relatively small number of people who follow Defendant's personal accounts. The Court finds that Defendant's posts were primarily personal content available to interested parties, analogous to the personal content in *Nebel*.

The Court further notes that terms associated with Plaintiff occur only twice in the posts collected by Plaintiff, both in posts created by other entities, rather than by Defendant. (Dkts. 33-

---

[6] The Federal Trade Commission requires "influencers" and other individuals who promote products using personal social posts to explicitly indicate that those posts are advertisements. *See* "Disclosures 101 for Social Media Influencers," Federal Trade Commission, November 2019 (available at https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf.) This mandatory disclosure is often done using designations such as "#paid partnership" or "#ad." *Id.*

17; 29-4.) Conversely, the profile sections of Defendant's social media accounts do use the marks in their descriptions of Defendant. (Dkt. 1 at ¶ 30-32.) However, the Court does not agree with Plaintiff's argument that these profiles are particularly targeted at California simply because Defendant is a sommelier and wine is made in California. The Court is similarly unconvinced that Defendant's contacts with Plaintiff in order to apply for testing amount to forum targeting. As was true in *Nebel*, where the defendant sent emails to the plaintiff to discuss the sponsorship at issue, contact with the plaintiff alone does not amount to a contact between defendant and the forum state. 200 F. Supp. 3d at 986 (citing *Walden* 571 U.S. at 286). The fact that Defendant made contact with Plaintiff, either digitally or on paper, to apply for the tests, does not establish any connection between Defendant and California.

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over the Defendant. Accordingly, the Court HEREBY DISMISSES the action for want of personal jurisdiction. The Clerk of Court is directed to close the file.

**IT IS SO ORDERED**.

Dated: December 9, 2019

_____
SALLIE KIM
United States Magistrate Judge